[Cite as *State v. Cowen*, 2012-Ohio-3682.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96969**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JEFFREY COWEN

DEFENDANT-APPELLANT

**JUDGMENT:**
**AFFIRMED**

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-545125

**BEFORE:** Keough, J., Stewart, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** August 16, 2012

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
Leader Building, Suite 940
526 Superior Avenue
Cleveland, OH 44114

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
Carl Sullivan
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH 44113

KATHLEEN ANN KEOUGH, J.:

**{¶1}** Defendant-appellant, Jeffrey Cowen, appeals from the trial court's judgment, rendered after a jury trial, finding him guilty of rape, gross sexual imposition, and kidnapping, and sentencing him to 25 years to life in prison. We affirm.

## I. Procedural History

**{¶2}** Cowen was indicted in a multi-count indictment for rape, gross sexual imposition, and kidnapping a victim less than 13 years old. Counts 1-5 charged rape in violation of R.C. 2907.02(A)(1)(b); Counts 6-10 charged gross sexual imposition in violation of R.C. 2907.05(A)(4); and Counts 11-15 charged kidnapping in violation of R.C. 2905.01(A)(4), with sexual motivation specifications.

**{¶3}** At the conclusion of the State's case at trial, the trial court dismissed Counts 1, 4, 5, 6, 9, 10, 11, 14, and 15 upon the State's motion to dismiss. The jury subsequently found Cowen guilty of two counts of rape, with a further finding that he compelled the victim to submit by force or threat of force; two counts of gross sexual imposition; and two counts of kidnapping, without the sexual motivation specifications.

**{¶4}** At sentencing, the court merged the kidnapping counts into the rape counts. The court sentenced Cowen to two concurrent terms of a minimum of 25 years to a maximum of life in prison on the rape convictions, and two concurrent terms of two years in prison on the gross sexual imposition convictions, to run concurrent to the sentences on

the rape convictions.  The court also classified Cowen as a Tier III sex offender under the Adam Walsh Act.  Cowen now appeals.

## II.  Trial Testimony

{¶5}  The evidence at trial demonstrated that the case arose when Cuyahoga County Department of Children and Family Services ("CCDCFS") received a referral in November 2010 from another Children and Family Services agency requesting that CCDCFS investigate allegations that Cowen had sexually abused six-year-old J.C.[1]

{¶6}  Heather Cigoi, an intake sex abuse social worker for CCDCFS, testified that after receiving the referral, she interviewed J.C.'s mother, Cynthia Biefeldt, J.C., and Cowen, who was Biefeldt's boyfriend.  A few weeks later, after gathering more information, Cigoi took J.C. to St. Vincent Charity Hospital for a medical assessment. Cigoi testified that as she and J.C. were waiting and talking generally, J.C. spontaneously told her that his mom and dad fought "all the time because Daddy touches me." According to Cigoi, J.C. said that the last incident had occurred the previous Sunday.  He told her that his father would put his penis in his mouth and it would grow.  He described the penis as having hair around it and said that it would get wet; he also said "wet stuff" would come out of the penis and he would spit it in the sink.  J.C. told Cigoi that Cowen had also touched him other times; one time with his hand on J.C.'s buttocks, another time when something was put into his buttocks, and another time when Cowen performed oral

---

[1]The victim is referred to by initials in accord with this court's policy of not disclosing the identities of child victims of sexual abuse.

sex on him and he performed oral sex on Cowen. J.C. told Cigoi that his mother knew about what happened and would sometimes sleep in his bed with him to keep him safe.

{¶7} Cigoi then took J.C. to University Hospitals to be examined by a nurse who specializes in examining individuals who have been sexually abused. Subsequently, she placed J.C. in a foster home and referred him to the Alpha Clinic at MetroHealth Medical Center, where he was seen by Dr. Mark Feingold.

{¶8} Dr. Feingold was qualified as an expert and testified that he is a pediatrician and the director of the Alpha Clinic, which evaluates and treats children who might have been sexually abused. Dr. Feingold testified that the Clinic has established procedures for evaluating child victims of sexual abuse and the procedures were followed when he evaluated J.C. on January 4, 2011.

{¶9} Dr. Feingold said that J.C. complained of pain around his penis when the doctor pulled the foreskin back, and he told Dr. Feingold that he had some bad dreams. He also told Dr. Feingold that "some bad things" had happened in Cleveland and that his "step-dad Jeff" was the perpetrator. J.C. told Dr. Feingold that Jeff had put his finger and his "private part" in J.C.'s bottom; then, using anatomically-correct drawings of a boy and adult man, J.C. pointed to specific body parts and explained that the male had put his fingers and penis in the boy's buttocks, and his penis in the boy's mouth. J.C. told Dr. Feingold that this had happened "many times" and that his bottom would bleed and hurt when he went to the bathroom afterwards. J.C. also told Dr. Feingold that Jeff told him not to tell anyone what had happened or "he would kill me with his gun."

{¶10} Dr. Feingold testified that his physical examination of J.C. was normal but that a normal exam does not mean that sexual abuse has not occurred because lacerations or tears to the rectum heal quickly and may not leave a scar. Dr. Feingold stated that his diagnosis upon completing the exam was child sexual abuse.

{¶11} J.C. initially testified that he "forgot" what had happened to him and did not want to talk about it. Upon further questioning, J.C. testified that Cowen put his penis in his mouth "four times" and in his bottom "more than one" time. J.C. identified a picture of the house where he lived with Cowen and Biefeldt and a picture of his bedroom and the "pallet" where he slept. J.C. testified that the events with Cowen occurred on the pallet in his bedroom. He testified that sometimes he would have to spit something "nasty" in the sink after Cowen inserted his penis in J.C.'s mouth.

{¶12} The defense presented three witnesses. Dr. Sandra McPherson, a clinical and forensic psychologist, testified that an interview of a child who has allegedly been sexually abused should be videotaped or audiotaped. She admitted, however, that if a child suddenly and spontaneously disclosed to her that he had been sexually abused, she would not stop the conversation so it could be videotaped. Dr. McPherson testified that in this case, Ms. Cigoi followed proper protocol in allowing J.C. to continue to disclose what had happened to him when he suddenly began telling her about Cowen's sexual abuse. She testified further that a six-year-old child's description of a penis as hairy, becoming hard, wet, and being inserted into the child's mouth is beyond the child's normal experience and development.

{¶13} Cynthia Biefeldt testified that she, J.C., and Cowen moved to Cleveland from Florida in August 2010. Cynthia stated that she loved Cowen very much and had dated him for four years. She testified further that she did not recall ever seeing Cowen follow J.C. into his bedroom and never heard J.C. scream for help from his bedroom. She also testified that she had punished J.C. several times for lying. Cynthia stated that she was arrested in December 2010 and subsequently pled guilty to obstruction of justice regarding this case.

{¶14} Tammy Biefeldt, Cynthia's mother and J.C.'s grandmother, who lives in North Carolina, testified that prior to trial, she had not seen J.C. for approximately two years, but that he called her several times after he had been placed in foster care. Tammy testified that in these phone conversations, she asked J.C. whether Cowen had ever abused him; the trial court sustained the State's objections when defense counsel asked Tammy several times what J.C. had told her. She testified further that she believed Cowen was a "manipulator" and a "charmer" and she thought he was "emotionally abusive."

III. Analysis

A. Right to Confront Witnesses

{¶15} Early in trial, the court issued an order in limine prohibiting any evidence that Cowen allegedly molested J.C. in Florida before he, Cynthia Biefeldt, and J.C. moved to Ohio. The court explained that its ruling was to ensure that the jury did not

impute any prior bad acts to Cowen that had never been proven and were not the subject of the trial.

{¶16} On the fourth day of trial, defense counsel informed the court that J.C.'s grandmother, Tammy Biefeldt, had made tape recordings of several telephone conversations she had with J.C. after Cowen's arrest in which J.C. allegedly denied that Cowen had "ever" molested him. Defense counsel sought to introduce these tapes at trial but the trial court ruled that the tapes were inadmissible. Later, during Tammy Biefeldt's testimony, the trial court sustained the State's objection to any testimony regarding what J.C. told Tammy during the telephone calls.

{¶17} In his first assignment of error, Cowen argues that the trial court's rulings violated his constitutional right to confront the witnesses against him. We find no error.

{¶18} The admission or exclusion of relevant evidence is within the trial court's discretion. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 434 (1987), paragraph two of the syllabus. We therefore review a trial court's decision regarding the admission of evidence under an abuse of discretion standard. *Id.* A trial court abuses its discretion when it acts in an unreasonable, arbitrary, or unconscionable manner. *State v. Parker*, 8th Dist. No. 93835, 2011-Ohio-1059, ¶ 60.

{¶19} The trial court did not act unreasonably in excluding the tapes and any reference to the tapes. First, defense counsel did not disclose the existence of the tapes in a timely manner as required by Crim.R. 16. Further, as the trial court noted, the tapes appear to have been manufactured for trial by an interested party who tried to coach a

seven-year-old child over the telephone. And, as the trial court also noted, the tapes made no distinction between the alleged molestation in Florida and the alleged events in Ohio. Admitting the tapes would therefore have negated the trial court's ruling that in order to protect Cowen from the improper admission of "other acts" evidence, no evidence regarding alleged events in Florida was to be admitted.

{¶20} With respect to the trial court's exclusion of any testimony from Tammy regarding what J.C. told her on the phone, defense counsel stated that Tammy would testify that J.C. told her that Cowen had never molested him, contrary to J.C.'s testimony at trial. Under Evid.R. 613(B), extrinsic evidence of a prior inconsistent statement of a witness is admissible if (1) the witness has been afforded a prior opportunity to explain or deny the statement; and (2) the subject matter of the statement is a fact that is of consequence to the determination of the action. Here, defense counsel did not give J.C. an opportunity to explain or deny any statements he allegedly made to Tammy. Specifically, defense counsel never asked J.C. if it were true that he had told his grandmother that Cowen never touched him. Accordingly, defense counsel failed to lay the proper foundation for the admission of extrinsic evidence of a prior inconsistent statement of a witness and, therefore, the trial court properly excluded any testimony from Tammy regarding what J.C. told her during his phone conversations with her.

{¶21} In his second assignment of error, Cowen contends that the trial court violated his rights to confrontation and cross-examination when it ruled that defense counsel could not "challenge the quality of the police investigation."

**{¶22}**  At trial, Cleveland police detective James Butler, who investigated the case, testified that the police collected several items from J.C.'s bedroom (a comforter, pillow, and pillowcase) but the Bureau of Criminal Identification and Investigation refused to DNA-test the items.  Butler testified that BCI's refusal to test for DNA in some cases is frustrating but understandable:  DNA testing is very expensive, and one would expect to find the DNA of an individual who lived in the home on the fabrics found in the home.

**{¶23}** During the presentation of the defense case, defense counsel informed the court that he wanted to call Michael Velton, a BCI representative, to testify that he did not have or did not remember having a conversation with Detective Butler in which he refused to test the bedding from J.C.'s bedroom, and that Velton had no records at BCI requesting that the bedding be tested.  Although the trial court never ruled that defense counsel could not call Velton, the judge informed him that counsel had not met the Evid.R. 613(B) requirements for bringing in extrinsic evidence to impeach Det. Butler's testimony about whether BCI refused to test the bedding.

**{¶24}** As noted above, extrinsic evidence of a witness's prior inconsistent statement is admissible when the subject matter of the statement is a fact that is of consequence to the determination of the litigation.  Here, Det. Butler's testimony that BCI refused to test the bedding was not a fact of consequence to the determination of the action; i.e., whether Cowen molested J.C.  It was a collateral matter to the determination

of Cowen's guilt and, thus, under Evid.R. 613(B), not admissible to impeach Det. Butler's credibility.

{¶25} The trial court did not abuse its discretion in excluding Michael Velton's testimony and the tapes of telephone conversations between Tammy and J.C. and any reference to them. Assignments of error one and two are therefore overruled.

B.     Witness Misconduct

{¶26} In his third assignment of error, Cowen contends that J.C.'s misconduct while he was testifying is grounds for a new trial. Specifically, Cowen contends that while he was testifying, J.C. looked to Heather Cigoi three times for the answer but the trial court refused to allow defense counsel to approach the bench about the issue. He also contends that Cigoi's presence in the courtroom violated the trial court's order regarding separation of witnesses.

{¶27} The record is clear, however, that Cigoi was not in the courtroom during J.C.'s testimony. Theresa Matthews, the State's victim advocate, was in the back of the courtroom during J.C.'s testimony, but the trial judge specifically stated that she looked at Matthews periodically while J.C. was testifying and did not observe any improper responses or gestures from her. The trial judge also stated that she would have immediately taken action if she had noticed anything improper.

{¶28} Cowen's third assignment of error is without merit and therefore overruled.

C.     Closing Argument

**{¶29}** In his fifth assignment of error,[2] Cowen argues that he was denied due process of law when the trial court limited closing argument to 30 minutes for each side.

**{¶30}** "The trial court in a criminal proceedings may in its discretion limit the duration of closing arguments, as long as such limitation is reasonable under the circumstances." *State v. Ferrette*, 18 Ohio St.3d 106, 110, 480 N.E.2d 399 (1985). We therefore review the trial court's decision under an abuse-of-discretion standard, recognizing that depending on the circumstances, what may be a reasonable limitation in one case could be unreasonable in another. *State v. Jenkins*, 15 Ohio St.3d 164, 221, 473 N.E.2d 264 (1984).

**{¶31}** In determining whether a court has abused its discretion in imposing a time limit for closing argument, a reviewing court should consider (1) the circumstances of the case, (2) the gravity of the offense, (3) the number of witnesses, (4) the volume of the evidence, and (5) the length of the trial. *State v. Moseley*, 8th Dist. No. 92110, 2010-Ohio-3498, ¶ 60, citing *Jenkins* at 221.

**{¶32}** Considering these factors, we find the trial court's imposition of 30 minutes for closing argument to be unreasonable. Cowen was indicted on multiple counts of rape, gross sexual imposition, and kidnapping. The jury heard five days of testimony involving nine witnesses whose testimony spanned nearly 1000 pages of the transcript. And Cowen faced significant prison time (25 years to life) if he was convicted of the charges. Accordingly, although we agree with the trial court that a time limit forces

---

[2]We address the fourth assignment of error later in the opinion.

counsel to make a succinct and focused closing argument, we find the trial court's limitation on closing argument in this case to be unreasonable.

**{¶33}** Nevertheless, we do not find that Cowen's substantial rights were prejudiced such that reversal is warranted. There is nothing in the record, and Cowen makes no argument, to demonstrate that the 30-minute time limit impaired Cowen's defense or that a greater time period would have changed the outcome. Further, our review of the record demonstrates that Cowen's counsel was able to effectively summarize the evidence and present the defense's theory of the case, while criticizing the State's theory, all within the 30-minute time limitation. Accordingly, we find the trial court's error to be harmless beyond a reasonable doubt. *See* Crim.R. 52(A); *Moseley* at ¶ 62.

**{¶34}** The fifth assignment of error is overruled.

D.    Disparagement of Defense Counsel

**{¶35}** In his sixth assignment of error, Cowen contends that he was denied his constitutional right to due process and a fair trial because the trial judge "disparaged" defense counsel, yelled at counsel, and embarrassed counsel by admonishing him in front of the jury during closing argument. He claims that the trial judge was biased against him.

**{¶36}** "It is well settled that a criminal trial before a biased judge is fundamentally unfair and denies a defendant due process of law." *State v. Dean*, 127 Ohio St.3d 1420, 2010-Ohio-5070, 937 N.E.2d 97, ¶ 48, quoting *State v. LaMar*, 95 Ohio St.3d 181,

2002-Ohio-2128, 767 N.E.2d 166, ¶ 34. Judicial bias has been described as "'a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as [opposed to] an open state of mind which will be governed by the law and the facts.'" *Id.*, quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 132 N.E.2d 191 (1956), paragraph four of the syllabus.

{¶37} Our review of the record demonstrates that the judge never disparaged defense counsel in front of the jury. The judge acknowledged that when defense counsel began telling the jury in closing argument that Cowen was not indicted until several weeks after Cigoi's initial interview with the family, she sternly instructed the jury that there was no evidence regarding when Cowen was charged and the jury was to disregard counsel's statement. Although counsel may have been embarrassed at the judge's stern inflection during her instruction to the jury to disregard counsel's statement, our review of the record demonstrates that the judge instructed counsel at the beginning of trial that evidence and discussion regarding when Cowen was charged was not relevant and would not be permitted. Accordingly, we find no bias in the court's instruction to the jury.

{¶38} Further, our review of the record demonstrates that the trial judge harbored no bias against defense counsel or Cowen during the proceedings. The record reflects that the judge treated all parties and counsel with respect as manifested in the judge's comments and rulings during the trial.

{¶39} The sixth assignment of error is therefore overruled.

E.    Dr. Feingold's Testimony

**{¶40}** In his seventh assignment of error, Cowen contends that he was denied his right to a fair trial because in response to the prosecutor's question regarding whether he reached a medical diagnosis after examining J.C., Dr. Feingold testified that his diagnosis was "child sexual abuse." Cowen contends that Dr. Feingold's testimony was, in actuality, opinion testimony that J.C. was telling the truth about what happened to him, in violation of the Ohio Supreme Court's directive in *State v. Boston*, 46 Ohio St.3d 108, 545 N.E.2d 1220 (1989).

**{¶41}** In *Boston*, the Ohio Supreme Court determined that expert testimony on the ultimate issue of whether sexual abuse has occurred in a particular case is helpful to jurors and is therefore admissible pursuant to Evid.R. 702 and 704. *State v. Gersin*, 76 Ohio St.3d 491, 1996-Ohio-114, 668 N.E.2d 486 (1996). Nevertheless, the Court directed that while an examining physician may provide his opinion as to whether he observed evidence of sexual abuse, he may not vouch for the veracity of the child victim. *Boston* at 108.

**{¶42}** Here, despite Cowen's assertions otherwise, Dr. Feingold expressed no opinion as to J.C.'s veracity. Dr. Feingold's testimony related to his examination of J.C. and his medical diagnosis as a result of that examination and J.C.'s statements to him. "That this diagnosis was based, in part, on statements made to him by the victim does not require the conclusion that the doctor is vouching for the veracity of the victim's testimony." *State v. Johnson*, 8th Dist. No. 80436, 2002-Ohio-7057, ¶ 47. *See also*

*State v. Ferrell*, 8th Dist. No. 92573, 2010-Ohio-1201, ¶ 65 (doctor's testimony regarding child victim's description of incidents of sexual abuse and diagnosis of sexual abuse was not expression of doctor's opinion as to victim's veracity). The seventh assignment of error is therefore overruled.

**{¶43}** In his eighth assignment of error, Cowen contends that he was denied his constitutional right to effective assistance of counsel because trial counsel did not object to Dr. Feingold's testimony regarding his diagnosis of child sexual abuse. The two-pronged test for ineffective assistance of counsel requires that the defendant show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Finding no error in the admission of Dr. Feingold's testimony, we likewise find no error in counsel's failure to object to his testimony. The eighth assignment of error is therefore overruled.

F.     Sufficiency and Manifest Weight of the Evidence

**{¶44}** In assignments of error nine and ten, Cowen argues that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.

**{¶45}** The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the

essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 942 (1991), paragraph two of the syllabus.

{¶46} A manifest weight challenge, on the other hand, questions whether the prosecution met its burden of persuasion. *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 541 (1982). A reviewing court may reverse the judgment of conviction if it appears that the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. A finding that a conviction was supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *Id.* at 388.

{¶47} Cowen was convicted of rape in violation of R.C. 2907.02(A)(1)(b), which provides that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * the other person is less than thirteen years of age." He was convicted of gross sexual imposition in violation of R.C. 2907.05(A)(4), which provides that "[n]o person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender * * * when * * * the other person * * * is less than thirteen years of age." He was also convicted of kidnapping in violation of R.C. 2905.01(A)(4), which provides that "[n]o person * * * in the case of a victim under the age of thirteen * * * by any means, shall * * * restrain the liberty of the other person * * * to engage in sexual activity."

{¶48} Cowen argues that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence because they were based only upon J.C.'s testimony, without any other corroboration, and that there was no credible evidence to support his convictions. We disagree.

{¶49} Although J.C. initially testified that he "forgot" what happened to him and did not want to talk about it, with the assistance of line drawings of a man and a boy, he testified very specifically as to what Cowen had done to him. He told the jury that Cowen had put his "private part" in his mouth four times and in his bottom more than once. He also identified pictures of his house, his bedroom, and the "pallet" in his bedroom where these events occurred. He identified a picture of the bathroom and the sink in the bathroom, and testified that he sometimes spit something "nasty" in the sink after Cowen inserted his penis in his mouth "because it tasted yucky."

{¶50} J.C.'s trial testimony was consistent with what he unexpectedly told Heather Cigoi while they were waiting for him to be assessed at St. Vincent Charity Hospital. Cigoi testified that she had not asked J.C. any direct questions about the suspected abuse when he suddenly and spontaneously told her that his mom and dad fought because Cowen touched him. He then described multiple incidents in which he was sexually abused by Cowen. Additionally, J.C. told Cigoi that Cowen's penis was hairy, would get wet, and that "wet stuff" would come out of it and he would spit that in the sink. Cigoi testified that J.C. told her that he did not tell people what had happened to him because he was afraid of Cowen and would get whipped.

{¶51} J.C.'s trial testimony was also consistent with what he told Dr. Feingold. J.C. told Dr. Feingold that some "bad things" had happened in Cleveland and that his "step-dad Jeff" was the perpetrator. Using line drawings of an adult male and a boy to illustrate what had happened, J.C. pointed to specific body parts and told Dr. Feingold that the man had put his fingers and penis in the boy's buttocks and his penis in the boy's mouth "many times." J.C. also told Dr. Feingold that Cowen told him not to tell anyone what had happened or "he would kill me with his gun." Dr. Feingold testified that he followed established procedures for evaluating child victims of sexual abuse when he evaluated J.C. and that based upon the detailed history from J.C., his medical diagnosis was child sexual abuse.

{¶52} In light of this testimony, the jury did not lose its way in finding Cowen guilty of rape, kidnapping, and gross sexual imposition. The state's evidence demonstrated that Cowen engaged in sexual conduct with J.C., and that he forced J.C. to have sexual contact with him. Although Cowen contends that J.C.'s testimony was not credible, Dr. Feingold testified that six-year-old children generally do not make up this kind of story and, further, if the story were made up, it would be difficult for a six-year-old child to consistently tell the same story. J.C., however, reported the same details about what had happened to Ms. Cigoi and Dr. Feingold, and at trial.

{¶53} Furthermore, the testimony of the defense witnesses helped to corroborate J.C.'s testimony. Dr. McPherson testified that a six-year-old child's description of a penis as hairy, becoming hard and wet, and inserted into the child's mouth is beyond the

child's normal experience and development. Cynthia Biefeldt admitted that she pleaded guilty to obstruction of justice in connection with this case. And Tammy Biefeldt testified that her initial impression of Cowen was that he was emotionally abusive and a "manipulator."

**{¶54}** Although we consider the credibility of witnesses in a manifest weight challenge, we are mindful that the determination regarding witness credibility rests primarily with the trier of fact because the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections — observations that are critical to determining a witness's credibility. *State v. Clark*, 8th Dist. No. 94050, 2010-Ohio-4354, ¶ 17, citing *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996), and *State v. Antill*, 176 Ohio St. 61, 66, 197 N.E.2d 5648 (1964). And a jury is free to accept or reject any or all the testimony of any witness. *State v. Smith*, 8th Dist. No. 93593, 2010-Ohio-4006, ¶ 16. Upon review, we do not find that the jury lost its way or created a miscarriage of justice in finding Cowen guilty of rape, gross sexual imposition, and kidnapping.

**{¶55}** Accordingly, Cowen's convictions are supported by the manifest weight of the evidence; thus, they are also supported by sufficient evidence. The ninth and tenth assignments of error are therefore overruled.

G.     Mistrial

**{¶56}** Prior to trial, the judge instructed the parties that there was to be no testimony or evidence relating to any alleged sexual abuse of J.C. by Cowen in Florida.

The parties stipulated that the only information to be given to the jury about any events alleged to have occurred in Florida was that "Cuyahoga County Children and Family Services received a referral from another Children and Family Services agency requesting them to investigate allegations of possible sexual abuse of [J.C.] by Jeffrey Cowen."

**{¶57}** Cigoi testified on direct examination regarding what she did after receiving the referral. Upon cross-examination, defense counsel vigorously challenged the vagueness of her written report, as well as alleged inaccuracies in the report. Cigoi's responses were necessarily limited because she could not mention how the alleged events in Florida contributed to her conclusion that Cowen had sexually abused J.C. Upon recross, defense counsel again vigorously challenged Cigoi's conclusion that Cowen had sexually abused J.C. When defense counsel intimated that Cigoi's conclusion was wrong because J.C.'s story was not consistent, Cigoi informed him that it was consistent with information that she "got from another state." When defense counsel asked, "[a]nd there were no other witnesses, were there?" — Cigoi responded that "[t]here was information from another state that I used." When defense counsel then asked Cigoi, "[i]n that information, there was no mention of any eye witnesses, were there?" — she responded, "[n]o eye witnesses but another child victim."

**{¶58}** In his fourth assignment of error, Cowen contends that the trial court erred in denying his motion for a mistrial after Cigoi blurted out this information.

**{¶59}** The grant or denial of an order of mistrial is within the trial court's discretion. *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991). A trial

court need not declare a mistrial unless "the ends of justice so require and a fair trial is no longer possible." *Id.*

**{¶60}** Cowen contends that a fair trial was no longer possible after Cigoi's statement and that "but for that remark in such a close case," the jury would not have found him guilty. We are not persuaded.

**{¶61}** Cigoi's reference to another victim was an isolated comment in a five-day trial and was immediately followed by an instruction to the jury to disregard the statement. After Cigoi testified, the judge again instructed the jury about the stipulation regarding the referral from another agency to CCDCFS and told them "the only relevance to you of the other Children and Family Services agency is the fact that explains why the local Cuyahoga County department went out to investigate. So you are to disregard, not speculate, or use in any way information mentioned from another state or agency." And before closing arguments, the judge again instructed the jury that "[y]ou may make no use of any information you heard or thought you heard of what happened or supposedly happened in any other state. No evidence has been presented in this case of anything that happened in any other state."

**{¶62}** A jury is presumed to follow the instructions, including curative instructions, given it by a trial judge. *State v. Garner*, 74 Ohio St.3d 49, 59, 1995-Ohio-168, 656 N.E.2d 623. Further, this was not, as Cowen contends, a "close" case. As discussed above regarding assignments of error nine and ten, there was overwhelming evidence of Cowen's guilt. Thus, Cowen was not prejudiced by Cigoi's

isolated remark and the trial court did not abuse its discretion in denying his motion for a mistrial. *See State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 175 (defendant not prejudiced by witness's isolated reference to defendant's prior conviction where there was overwhelming evidence of defendant's guilt).

**{¶63}** The fourth assignment of error is therefore overruled.

**{¶64}** Affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, JUDGE

MELODY J. STEWART, P.J., and
MARY EILEEN KILBANE, J., CONCUR