[Cite as *State v. Jones*, 2015-Ohio-5540.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 102814**

**STATE OF OHIO**

PLAINTIFF-APPELLANT

vs.

**DEMETRIUS JONES**

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-590499-A

**BEFORE:**  Stewart, J., E.A. Gallagher, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:**  December 31, 2015

**ATTORNEYS FOR APPELLANT**

Timothy J. McGinty
Cuyahoga County Prosecutor

Brett Hammond
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Robert L. Tobik
Cuyahoga County Public Defender

Paul A. Kuzmins
Assistant Public Defender
310 West Lakeside, Suite 200
Cleveland, OH 44113

MELODY J. STEWART, J.:

{¶1} One day before the statute of limitations was to expire, the Cuyahoga County Grand Jury returned an indictment charging defendant-appellee Demetrius Jones with rape and kidnapping. Jones filed a motion to dismiss the indictment on grounds of preindictment delay. He argued that the state's 20-year delay in bringing the indictment actually prejudiced his ability to defend the charges and that the state's reasons for delaying the prosecution were not enough to overcome the prejudice he suffered. The court granted the motion to dismiss, and the state appeals: its sole assignment of error contests the dismissal.

{¶2} The events at issue in this case occurred in October 1994. The victim told the police that she and Jones were in his apartment when Jones became violent, threatened to kill her, and then raped her. The victim claimed that Jones's mother and the mother's boyfriend were present at the time, but Jones told them to go to another room. Neither person present assisted her despite screams and pleas for help. She later identified Jones as her attacker. The police arrested Jones and submitted the allegations to the grand jury. The prosecuting attorney's notes indicate that the victim failed to attend the proceedings ("Victim FTA — moved to Philly") and the grand jury entered a no bill. The police released Jones and closed the case.

{¶3} In 2013, the Bureau of Criminal Investigations tested specimens collected from the victim at the time of the alleged rape and matched DNA to Jones. The state located the victim, and she agreed to testify against Jones.

{¶4} Jones admitted to engaging in sexual conduct with the victim, but claimed that it was consensual. He gave the police a version of events very different from the victim's account. Jones claimed he and the victim met for the first time as she waited for a taxi. A friend told him that the victim was a crack addict and homeless because she spent money, given to her by

her boyfriend, on drugs. Jones offered the victim the use of a bathroom at his nearby apartment. The victim accepted. She then asked Jones if he could obtain a rock of crack cocaine. Jones said that he could and left the victim in his apartment for an hour before returning with the crack cocaine. The pair smoked the crack and engaged in consensual intercourse. The victim asked Jones to get another rock of crack cocaine, but Jones declined because he was tired. He fell asleep and was awakened by the police. The police spoke to Jones's mother, who confirmed that she and her boyfriend were present in the apartment at the time the rape allegedly occurred, but claimed that they did not hear any screams or cries for help. Jones's mother died in February 2011; at the time of the indictment, the mother's boyfriend could not be located.

{¶5} The statute of limitations for a criminal offense is a criminal defendant's primary protection against overly-stale criminal charges. *United States v. Marion*, 404 U.S. 307, 322, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). In some circumstances, however, the Due Process Clause of the Fifth Amendment has been applied to provide additional protection against egregious delay in instituting prosecutions. *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). As with all due processes claims, a claim of preindictment delay rests on "basic concepts of due process and fundamental justice." *State v. Jones*, 8th Dist. Cuyahoga No. 101258, 2015-Ohio-2853, ¶ 13. To establish that preindictment delay violated the Due Process Clause, a defendant must first show that the delay caused actual and substantial prejudice to his right to a fair trial and, second, that the state delayed to gain a tactical advantage or slowed the process down for some other impermissible reason. *United States v. Gouveia*, 467 U.S. 180, 192, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984), citing *Lovasco* at 789. Regarding the second factor — the state's reason for the delay — the state must produce evidence of a justifiable reason for the delay. *State v. Whiting*, 84 Ohio St.3d 215, 217, 1998-Ohio-575, 702 N.E.2d 1199.

Decisions to grant or deny a motion to dismiss for preindictment delay are reviewed for an abuse of discretion. *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 33, citing *State v. Parson*, 6 Ohio St.3d 442, 445, 453 N.E.2d 689 (1983).

{¶6} The facts of this case are very similar to our en banc decision in *Jones*: both cases involve the same defendant and the same claim that Jones was actually prejudiced by the delay in bringing the prosecution because his mother, who was present in the apartment during both alleged rapes, could have provided exculpatory evidence were she alive. Indeed, both cases involve the allegation that Jones took a woman to his mother's house where the mother and one other person were present (in this case, the mother's boyfriend; in the en banc decision the other person was Jones's brother), yet neither was available to testify.

{¶7} However, even more compelling in this case is that Jones could point to a police statement where the mother affirmatively told the police that she did not hear any screams or cries for help. A police report indicates that the mother told the police that "at no time did she or [her boyfriend] hear the victim screaming" but the mother did concede "that some of the time that the victim was there she * * * was asleep." In the en banc decision, we acknowledged that the mother did not speak to the police and that Jones could do no more than speculate as what her testimony might be at a trial. *Jones, supra*, at ¶ 44. Jones does not have to speculate in this case because the police statement shows that if the mother testified consistent with what she told the police, she would have corroborated Jones's version of events.

{¶8} With Jones's mother being deceased, her statement is hearsay as defined in Evid.R. 801(C) (defining "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"). Hearsay is presumptively inadmissible. *See* Evid.R. 802 ("Hearsay is not admissible except as provided by

the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio."). The police report containing the mother's statements likewise is hearsay, and also is inadmissible in the absence of an exception to the hearsay rule. *State v. Campbell*, 8th Dist. Cuyahoga No. 99807, 2014-Ohio-493, ¶45. It follows that the mother's statements are "hearsay-within-hearsay," each level of which — the police report and then the contents of that report — requires a separate basis for admission into evidence. *See* Evid.R. 805 ("Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules.").

{¶9} To show actual prejudice, a defendant must establish the "exculpatory value" of the alleged missing evidence. *State v. Wade*, 8th Dist. Cuyahoga No. 90029, 2008-Ohio-4574, ¶ 45. This requires a showing of how unavailable evidence or testimony would have proven an asserted defense. *State v. Robinson*, 6th Dist. Lucas No. L-06-1182, 2008 Ohio 3498, ¶ 121.

{¶10} In *State v. Adams*, Slip Opinion No. 2015-Ohio-3954, the Ohio Supreme Court stated that "[t]he death of a potential witness during the preindictment period can constitute prejudice, but only if the defendant can identify exculpatory evidence that was lost and show that the exculpatory evidence could not be obtained by other means." *Id*. at ¶ 103, citing *United States v. Rogers*, 118 F.3d 466, 475 (6th Cir.1997). Jones has demonstrated the "exculpatory value" of his mother's statement. He has asserted from the time of his arrest that he and the victim engaged in consensual sexual conduct. The victim denied this and claimed that she screamed and pleaded for the mother or her boyfriend to help her. The mother was present when the offense allegedly occurred and had she been able to testify consistent with her statement to

the police that she heard no screams or cries for help from the victim, that testimony would have significantly bolstered Jones's consent defense. On these facts, he showed actual prejudice.

{¶11} Although the state did not concede that Jones suffered actual prejudice, it did agree that the mother's testimony was unavailable to Jones. The state told the court that it would be willing to stipulate to the admissibility of the police report at trial. By agreeing to stipulate to the admission of the police report, the state insists that it "cured" any prejudice that Jones might suffer from his mother's unavailability at trial. At oral argument and relying on the above quote from the *Adams* case, the state argued that its stipulation demonstrates that Jones's exculpatory evidence could "be obtained by other means." *Id.* The state further argued that admission of the police report would more significantly prejudice the state because the mother's statement that she did not hear anything would bolster Jones's assertion that he and the victim engaged in consensual intercourse.

{¶12} Jones was under no obligation to accept the state's "cure" for the actual prejudice it caused. Section 10, Article I, of the Ohio Constitution, states that "[i]n any trial, in any court, the party accused shall be allowed * * * to meet the witnesses face to face * * *." As noted in *United States v. Santiago*, 987 F.Supp.2d 465, 486-487 (S.D.N.Y. 2013):

> A defendant is not required to give up one constitutional right in order to obtain the benefit of another; he need not accept a cure [sic] actual prejudice caused by Government delay that rises to the level of a due process violation by giving up his Sixth Amendment right of confrontation.

*Id*.

{¶13} Although the mother's statement to the police was exculpatory on its face, it consisted of a single line from a police report stating that at no time did she or her boyfriend hear the victim screaming. The detective who prepared the police report was unavailable at the time

of the hearing, so Jones had no opportunity to inquire whether his mother gave a fuller statement that had been omitted by the detective when preparing the report. And allowing the single line from the police report into evidence was no substitute for the kind of confrontation Jones would have enjoyed had the mother testified at trial.

{¶14} What is more, the state's offer to stipulate to the admission of the police report was not as generous as it might appear. The state offered the entire statement into evidence, including that part of the mother's statement that she may have been sleeping during the event. This gave it room to use the mother's equivocation in support of the prosecution, belying its assertion that admission of the statement would significantly prejudice the prosecution.

{¶15} With actual prejudice established, we next consider whether the court abused its discretion by concluding that the state failed to give a justifiable reason for the delay. The state argues that the delay in this case was justifiable because it was investigatory — it "did not have the means to test the DNA" recovered from the victim in 1994 so "it was reasonable for the State to abandon prosecution at that time." Appellant's brief at 16.

{¶16} The state's argument is disingenuous for three reasons. First, the delay was not caused by an inability to test for DNA at the time, but apparently because the victim did not appear to testify before the grand jury (the assistant prosecuting attorney's notes state: "Victim FTA — moved to Philly.") Second, Jones admitted to the police in 1994 that he and the victim engaged in sexual conduct, so the DNA results were superfluous if intended to prove Jones's identity. The 2013 DNA results constituted "new" evidence in the sense that those results did not exist in 1994, but the results were not "new" in the sense that they told the police something that they did not already know in light of Jones's admission that he engaged in sexual conduct with the victim. Third, there is nothing in the record to show that the state purposely delayed

prosecuting Jones because it could not test the DNA results. In fact, the state told the court that "[i]t is not clear to the State what more the Cleveland Police Department could have done in 1994." It shelved the rape kit containing the vaginal specimen samples for storage purposes — there was no longer any active investigation of the case, at least for the purpose of proving Jones's identity.

{¶17} In *State v. Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984), the Ohio Supreme Court noted that in addition to intentional delay designed to give the prosecution a tactical advantage over the defense, it would find unjustifiable delay "through negligence of error in judgment" when the error "effectively ceases the active investigation of a case" and the state "later decides to commence prosecution upon the same evidence that was available to it at the time that its active investigation was ceased." *Id*. at 158. The no bill returned by the grand jury halted the active investigation of the case, not because of any evidentiary insufficiency in the state's presentation, but by the state's own notation that the victim did not appear before the grand jury. There is nothing in the record to show that the state took any steps in the intervening 20 years to locate the victim. Indeed, the state carefully limits its argument on appeal to claiming that the delay was justified because there is new evidence. These reasons were justification for the court in its discretion to find that the state engaged in an unjustifiable delay in seeking an indictment against Jones.

{¶18} This leads us to what troubled the en banc majority in *Jones*, 8th Dist. Cuyahoga No. 101258, 2015-Ohio-2853. Prosecutions like this one were revived solely because testing of specimens collected from victims identified defendants' DNA. In this case, the results of testing identifying Jones as the source of DNA found in the victim added nothing to the case because Jones's identity as the alleged assailant has never been in question. Thus the DNA results

served no purpose other than being a catalyst to revisit a closed case where a prosecutor's notes indicate that the victim did not appear for the grand jury proceedings against Jones.

**{¶19}** We are aware that the United States Supreme Court stated in *Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752, that the "reluctance of the victim to testify" is a factor that goes into the decision to file criminal charges. *Id*. at 794, fn. 15. But criminal charges were filed against Jones as demonstrated by the no bill returned by the grand jury. The no bill did not prevent the state from obtaining a later indictment on the same complaint by another grand jury, *State v. Brooks*, 8th Dist. Cuyahoga Nos. 91336 and 91345, 2009-Ohio-2126, ¶ 7, but apart from the cumulative DNA result, there is no indication in the record that anything the state presented to the grand jury in October 2014 was different than what it presented in December 1994.

**{¶20}** As we have shown, the results of the rape kit were wholly unnecessary — the police not only had a positive identification of Jones as the assailant, they had him under arrest and presented a case to the grand jury. The court did not abuse its discretion by finding that the length of delay caused Jones actual prejudice and that the state failed to offer justification for the delay. The assigned error is overruled.

**{¶21}** Judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

MELODY J. STEWART, JUDGE

EILEEN A. GALLAGHER, P.J.,CONCURS;
EILEEN T. GALLAGHER, J., CONCURS WITH SEPARATE OPINION ATTACHED

EILEEN T. GALLAGHER, J., CONCURRING WITH SEPARATE OPINION:

**{¶22}** I concur with the majority's holding in this case but write separately to emphasize my belief that the facts and circumstances presented in this case are distinguishable from those addressed in *Jones I*.

**{¶23}** In *Jones I*, I joined the dissent finding that the application of "the new so-called 'due process and fundamental justice' standard offered by the majority [in *Jones I*] is in conflict with the long-standing actual or substantial prejudice standard that has been in play over the past three decades in Ohio." *Jones* at ¶ 51. Further, I agreed with the dissent's conclusion that the basis of Jones's motion to dismiss for preindictment delay relied on "speculative" and "self-serving claims of lost evidence," particularly where Jones's mother did not provide a statement to the police. As stated by the dissent, "Jones ha[d] no way of demonstrating to what his mother would or would not have testified." *Id.* at ¶ 52-54. Accordingly, I would have concluded that the dismissal of Jones's case in *Jones I* was improper based on his failure to establish actual prejudice.

**{¶24}** In this case, however, Jones's motion to dismiss does not rely on speculative information. In contrast to the scenario presented in *Jones I*, this court has the ability to review the concrete and exculpatory statements Jones's mother provided to the police in October 1994 at the time of their investigation into the alleged rape. As stated by the majority, the mother's affirmative statement to the police that she did not hear any screams or cries for help may have corroborated Jones's claim that he engaged in consensual sex with the victim.

**{¶25}** Accordingly, while I continue to find the application of the "due process and fundamental justice" standard to be improper, I agree with the majority in this case that the trial court did not abuse its discretion by finding that "the length of delay caused Jones actual prejudice and that the state failed to offer justification for the delay."