[Cite as *State v. Edmond*, 2026-Ohio-561.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                    :

     Plaintiff- Appellee,       :

                                          No. 115142

v.                               :

KENNETH EDMOND,                   :

     Defendant-Appellant.       :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 19, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-15-601996-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Sarah J. Denney, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Jennifer J. Pritchard, Assistant Public Defender, *for appellant*.

MICHELLE J. SHEEHAN, A.J.:

{¶ 1} Defendant-appellant Kenneth Edmond ("Edmond") was convicted of two counts of rape pursuant to R.C. 2907.02(A)(2) and two counts of kidnapping

pursuant to R.C. 2905.01(A)(4). Edmond's convictions arise from separate incidents involving two victims, M.N. and M.B. Edmond appeals his convictions raising the following assignments of error with this court:

(1) The trial court erred in permitting the State to proceed on an indictment that should have been severed under Criminal Rule 14, prejudicing appellant's right to a fair trial.

(2) The trial court erred by allowing impermissible hearsay tesimony [sic] in violation of appellant's right of confrontation prejudicing appellant's right to a fair trial.

(3) Appellant's convictions were against the manifest weight of the evidence.

(4) Appellant's constitutional right to a fair trial was violated when due to the prosecutors' misconduct during closing argument. [sic]

(5) Appellant was denied his right to effective assistance of counsel when he failed to object to improper remarks of the State during closing arguments.

(6) Appellant was denied his right to effective assistance of counsel as the offenses herein were time barred under the statute of limitations.

(7) The cumulative errors committed during the trial deprived the appellant of a fair trial.

{¶ 2} Based on our thorough review of the record, we affirm Edmond's convictions. We overrule assignment of error No. 1 because the State's presentation of evidence at trial was simple and direct. Therefore, the trial court did not abuse its discretion in denying Edmond's motion to sever the indictment. Regarding assignment of error No. 2, while we find that the trial court abused its discretion in allowing the police-report narrative relating to M.N.'s incident to be read to the jury, we further find that this error was harmless. Assignment of error No. 3 is not well-

taken because the State met its burden of persuasion, and thus, Edmond's convictions were not against the manifest weight of the evidence. Assignment of error No. 4 is overruled because the State's comments during closing argument did not constitute prosecutorial misconduct. For the same reason, Edmond's fifth assignment of error relating to his defense counsel's failure to object during closing argument is also overruled. As to assignment of error No. 6, Edmond was not deprived of effective assistance of counsel by his defense counsel's alleged failure to argue that the statute of limitations barred this action because he cannot establish prejudice when there is no reasonable probability that an objection on this ground would have changed the outcome of this action. Last, we overrule assignment of error No. 7 arguing cumulative error because it is not applicable to an action wherein the appellate court finds no prejudicial error was committed by the trial court.

{¶ 3} Assignments of error Nos. 1-7 are overruled, and Edmond's convictions are affirmed.

**Statement of Facts**

### M.N. Incident – 9/15/2000

{¶ 4} In 2000, M.N. was a 72-year-old homeless woman. At approximately 4:00 a.m. on September 15, 2000, M.N. was walking under the Detroit-Superior Bridge in Cleveland, Ohio where she was raped by a stranger. After the attack, M.N. went to the area around Public Square where an unknown individual called the police. Cleveland police arrived to assist M.N. EMS took her to St. Vincent's Charity Hospital where she was examined by an emergency room physician. The doctor also

collected a sexual assault kit. The medical records from her emergency room visit state that M.N told the doctor that she was raped by a stranger, that they had vaginal intercourse with no condom, and that she had been experiencing vaginal bleeding since the attack.

{¶ 5} Following the attack, the police attempted to locate the unknown male in the area of the Detroit-Superior Bridge but did not find anyone matching the description provided by M.N. At that time, the police also attempted to locate M.N. by visiting local shelters but were unsuccessful. The police had no further contact with M.N.

{¶ 6} In 2013, M.N.'s sexual assault kit was submitted to the Ohio Bureau of Criminal Investigation ("BCI") for analysis. As a result of this testing, a DNA profile for an unknown male was found present on the vaginal and anal swabs submitted as part of M.N.'s sexual assault kit. M.N. was the only other contributor. Also in 2013, an investigator from the Cuyahoga County Prosecutor's Office attempted to locate M.N. At this time, he discovered that M.N. had died in 2005.

**M.B. Incident – 10/31/2001**

{¶ 7} In October 2001, M.B. was 21 years old and lived with her then boyfriend in an apartment in downtown Cleveland, Ohio. On the evening of October 30, 2001, M.B. had an argument with her boyfriend and a physical altercation with the building's security guard forcing her to leave the apartment. She left with her purse, a few dollars in her sock, and a hoodie.

{¶ 8} A little while after leaving the apartment, M.B. was sitting at a bus stop on Superior Avenue. She was deciding whether she should go to the hospital because of a possible concussion from the earlier fight or go to her girlfriend's house. At that time, she noticed an unknown male watching her. She decided to start walking rather than to get on the bus.

{¶ 9} The unknown male started walking behind her, and M.B. and the unknown male began talking. M.B. decided to walk to St. Vincent's Charity Hospital. As they walked, the unknown male suggested a short cut. Shortly thereafter, he grabbed her from behind and started choking her. He then pulled her under a bridge, continuing to keep her in a choke hold. At that time, she started begging for her life, asking him to let her go, and told him she would do whatever he wanted. The unknown male first forced her to perform oral sex and then he had vaginal intercourse with her. After he was finished, M.B. ran away when he had become distracted and had let go of her. M.B. left her purse at the scene and the money in her sock was gone.

{¶ 10} Immediately following the incident, M.B. was taken to the St. Vincent's Charity Hospital by an unknown individual who found her by the side of a nearby highway. M.B. was examined, and a sexual assault kit was collected by a SANE nurse. At the hospital, M.B. met with police and a report was filed.

{¶ 11} After the incident, however, the police were unable to locate M.B. at the address she provided them. Pursuant to department policy, the police sent her a certified letter requesting to speak to her regarding the incident, but they did not

hear back from her. At a later time, the police also contacted her to collect her belongings from the night of the incident, but again they did not hear back from M.B.

{¶ 12} In 2003, M.B.'s sexual assault kit was submitted to the BCI by the Cleveland Police Department for analysis. At that time, a DNA profile for an unknown male was found present on the vaginal swabs submitted. M.B. was the only other contributor.

{¶ 13} In approximately 2014 or 2015, the cold case department of the Cuyahoga County Prosecutor's Office began investigating M.B.'s case. The investigating officer was able to locate M.B. who was then living in Medina, Ohio. In November 2015, the officer interviewed M.B. but no new information regarding the identity of the unknown male was discovered.

{¶ 14} Also, in approximately 2014, the DNA profile for the unknown male identified in M.N.'s sexual assault kit was matched to the DNA profile for the unknown male from M.B.'s sexual assault kit. A John Doe indictment was filed on December 17, 2015, identifying this unknown male DNA profile as the defendant. The indictment set forth one count of rape and kidnapping relating to M.N. and two counts of rape, two counts of kidnapping, and one count of robbery relating to M.B.

{¶ 15} In 2020, the Cleveland Police Department submitted M.B.'s purse and its contents from the night of the incident to the BCI for fingerprint testing. The results of the testing did not yield any fingerprints besides M.B.'s.

{¶ 16} In 2022, an unspecified lead led investigators in the cold case unit to investigate members of the Edmond family. In 2023, the investigators conducted a "trash pull" where they recovered several soda cans from the garbage outside the Edmond house. The first two cans contained DNA profiles that did not match the DNA profile of the unknown male identified in M.N.'s and M.B.'s sexual assault kits. However, the third soda can tested contained a DNA profile that matched the unknown DNA profile relating to M.N.'s and M.B.'s cases. This DNA profile belonged to Edmond.

{¶ 17} Subsequently, a warrant was obtained and the investigating officers interviewed Edmond. As part of this interview and pursuant to the warrant, buccal swabs were obtained from Edmond. These buccal swabs were submitted to BCI for testing. The BCI results from the buccal swabs confirmed that Edmond's DNA profile matched the unknown male DNA profile present in both M.B.'s and M.N.'s sexual assault kits. The forensic scientist testified that the unknown male DNA profile present on the vaginal and anal swabs from M.N.'s sexual assault kit statistically matched Edmond's known DNA profile "as rarer than 1 in 1 trillion" that this DNA profile would match someone else. The testimony also confirmed that the unknown male DNA profile present on the vaginal swabs from M.B.'s sexual assault kit also statistically matched Edmond's known DNA profile "as 1 in 1 trillion" that this DNA profile would match someone else.

{¶ 18} Also in 2023, M.B. met with officers and was shown an anonymous photo array of males that included a photograph of Edmond and others who fit the

description of her unknown attacker.  M.B. identified Edmond as her attacker by recognizing his eyes.  Subsequently, the original indictment was amended on December 4, 2023, to name Edmond as the defendant.

{¶ 19} On March 7, 2025, Edmond filed a motion to sever the counts of the indictment.  The trial court denied the motion prior to trial.   A three-day jury trial was held from March 11, 2025, to March 13, 2025.  The jury returned a verdict of guilty on the rape and kidnapping counts related to M.N.  The jury returned a verdict of guilty on one count of rape and one count of kidnapping related to M.B.  The jury returned a verdict of not guilty on the remaining counts of rape, kidnapping, and robbery related to M.B.  On March 26, 2025, Edmond was sentenced to a total of 12 years in prison.

**Law and Analysis**

### Assignment of Error No. 1 — Severance

{¶ 20} Under assignment of error No. 1, Edmond argues that the trial court abused its discretion in denying his motion to sever the counts of the indictment under Crim.R. 14.  He alleges that he was prejudiced and that the State's evidence was not simple and direct but rather designed to "conflate the two cases" and "invit[ed] the jury to accumulate evidence from one case to the other."  The State argues that because the evidence at trial was simple and direct, any claim of prejudice by Edmond is negated.  We overrule this assignment of error because the State's evidence at trial was simple and direct.

{¶ 21} We review a denial of severance under Crim.R. 14 for an abuse of discretion. *State v. Jackson*, 2024-Ohio-958, ¶ 29 (8th Dist.), citing *State v. Spaulding*, 2016-Ohio-8126, ¶ 63. An abuse of discretion occurs when a court exercises "its judgment, in an unwarranted way, in respect to a matter over which it has discretionary authority." *Johnson v. Abdullah,* 2021-Ohio-3304, ¶ 35. The defendant "bears the burden of proving prejudice and of proving that the trial court abused its discretion in denying severance." *State v. Brinkley*, 2005-Ohio-1507, ¶ 29, citing *State v. Torres*, 66 Ohio St.2d 340 (1981), at syllabus.

{¶ 22} Crim.R. 14 provides relief from a prejudicial joinder. Crim.R. 14 states:

> If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants or provide such other relief as justice requires.

{¶ 23} Thus, under Crim.R. 14, a defendant who is prejudiced by a joinder of offenses may move to sever the charges against him. "A defendant claiming error in the trial court's refusal to allow separate trials of multiple charges has the burden of affirmatively showing that his rights were prejudiced." *Torres* at 343, citing *State v. Roberts*, 62 Ohio St.2d 170, 175 (1980). Indeed, "[w]hile there is always the possibility of prejudice from joinder of offenses, once the state has concluded its case, the defendant bears the burden of demonstrating actual prejudice from the

joinder." *State v. Cisternino*, 1994 Ohio App. LEXIS 4856, *5 (8th Dist. Oct. 27, 1994), citing *State v. Williams*, 1 Ohio App.3d 156, 159 (10th Dist. 1981).

{¶ 24} "If the defendant successfully establishes prejudice from joinder, then the burden shifts to the State to rebut the showing of prejudice in one of two ways." *State v. Wardlaw*, 2025-Ohio-2221, ¶ 46 (8th Dist.), citing *State v. Jackson*, 2015-Ohio-4274, ¶ 13 (8th Dist.). Specifically, the State may rebut defendant's showing of prejudice by satisfying either the "joinder test" or the "other acts test." *State v. Miller*, 2023-Ohio-1141, ¶ 80 (8th Dist.), citing *State v. Lott*, 51 Ohio St.3d 160, 163 (1990). "'If the state can meet the [requirements of] the joinder test, it need not meet the requirements of the stricter 'other acts' test.'" *Wardlaw* at ¶ 48, quoting *State v. Franklin*, 62 Ohio St.3d 118, 122 (1991).

{¶ 25} The "joinder test" is satisfied when the evidence presented at trial is "simple and direct." *State v. Belle*, 2019-Ohio-787, ¶ 24-25 (8th Dist.). "'Simple and direct evidence' means the evidence of each crime is 'so clearly separate and distinct as to prevent the jury from considering evidence of one crime as corroborative as the other.'" *Id.* at ¶ 25, quoting *State v. Quinones*, 2005-Ohio-6576, ¶ 48 (11th Dist.). "Evidence is 'simple and direct' if the trier of fact is capable of segregating the proof required for each offense." *Id.*, citing *State v. Gravely*, 2010-Ohio-3379, ¶ 39 (10th Dist.). "Evidence is 'simple and direct' if (1) the jury is capable of readily separating the proof required for each offense, (2) the evidence is unlikely to confuse jurors, (3) the evidence is straightforward, and (4) there is little danger that the jury would 'improperly consider testimony on one offense as corroborative of the other.'"

*State v. Valentine*, 2019-Ohio-2243, ¶ 48 (5th Dist.), quoting *State v. Wright*, 2017-Ohio-8702, ¶ 52 (4th Dist.).

{¶ 26} Further, "[a] trier of fact is believed capable of segregating the proof of multiple charges when the evidence as to each of the charges is uncomplicated." *State v. Lunder*, 2014-Ohio-5341, ¶ 33 (8th Dist.), citing *Torres,* 66 Ohio St.2d at 343-344. Thus, "'Ohio appellate courts routinely find no prejudicial joinder where the evidence is presented in an orderly fashion as to the separate offenses or victims without significant overlap or conflation of proof.'" *State v. Echols*, 2015-Ohio-5138, ¶ 16 (8th Dist.), quoting *State v. Lewis*, 2010-Ohio-4202, ¶ 33 (6th Dist.). "Courts have held that evidence of multiple offenses is 'simple and direct' where, for example, the offenses involved different victims, different incidents or factual scenarios, and different witnesses." *Valentine* at ¶ 49.

{¶ 27} Based on the record of this case, any prejudice Edmond may have suffered because of the joinder of the offenses was negated by the State's presentation of evidence in a simple and direct manner. Our independent review of the trial testimony reveals that this case presented relatively simple and straightforward evidence that was easily segregated by the State in its presentation. There was no evidence in the record that evidence presented by the State was likely to confuse the jury or was overly complicated.

{¶ 28} The State (as well as the trial court judge) made clear from the beginning of the trial that this case involved two separate victims and two separate incidents. The trial testimony was presented in a manner that reinforced this

distinction between the two victims and two incidents. Initially, the State's presentation focused on the incident involving M.B. beginning with her testimony, the police officer who responded to the scene, and the SANE nurse who treated M.B. and collected her sexual assault kit. The testimony continued with the investigator who conducted the blind photo array where M.B. identified Edmond as her attacker and the forensic scientist who tested the contents of M.B.'s sexual assault kit. The State generally concluded its case with its evidence related to M.N., namely her emergency room doctor and the forensic scientist who handled the testing of her sexual assault kit.

{¶ 29} While there was overlap in discussion by some witnesses regarding the two victims, these instances were minimal, not confusing, and necessitated by the facts. Indeed, the main overlap in testimony related to the investigating officers' efforts to locate the victims and to identify Edmond as a suspect. The minimal overlap in discussing DNA evidence was necessary since Edmond was tied to both victims through his DNA profile. The record does not demonstrate that this overlap was significant or resulted in such confusion to the jury that it would impair their ability to properly segregate the proof relating to each victim and the corresponding charges in this case. The simple and direct nature of the State's presentation as well as the lack of confusion by the jury regarding the evidence and charges presented is supported by the fact that the jury found Edmond guilty on some counts of the indictment and not guilty on other counts including the additional rape and kidnapping charges related to M.B.

{¶ 30} Because we find that the State's presentation of evidence in this matter satisfied the simple and direct test, the trial court did not abuse its discretion in denying Edmond's motion to sever the indictment. Assignment of error No. 1 is overruled.

**Assignment of Error No. 2 – Hearsay Evidence**

{¶ 31} In his second assignment of error, Edmond asserts that the trial court erred in allowing a testifying police officer to read to the jury an excerpt from the police report created in response to the incident involving M.N.[1] The excerpt contained statements made by M.N. to the responding police officer after the incident and summarized her description of what occurred between her and an unknown male. Edmond argues that the police-report narrative was inadmissible hearsay and its admission also violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. In response, the State argues that the police-report narrative was properly admitted as prior consistent statements offered in rebuttable under Evid.R. 801(D)(1)(b) and that Edmond's rights under the Confrontation Clause were not violated because the statements were nontestimonial. Based on our review of the record and applicable law below, we find that the trial court abused its discretion in permitting the police-report

---

[1] It should also be noted that the testifying officer was not the original officer who responded to the scene or the officer who created the police report.

narrative to be read to the jury but further find that this error was harmless. Therefore, we overrule assignment of error No. 2.

{¶ 32} In general, proffered evidence must fall within both constitutional requirements *and* the rules of evidence to be admissible. *State v. Nevins*, 2007-Ohio-1511, ¶ 36 (2d Dist.), citing *United States v. Crawford*, 541 U.S. 36, 51 (2004); *see also State v. Johnson*, 2023-Ohio-445, ¶ 47-48 (8th Dist.); Evid.R. 402 ("All relevant evidence is admissible, except as otherwise provided by the United States Constitution . . . [or] by these rules . . . ."). Specifically, "'even if an out-of-court statement is nontestimonial [meaning it does not violate the Confrontation Clause], for evidence of that statement to be properly admitted at trial, it must also be admissible under the rules of evidence, including the rules against the admission of hearsay.'" *State v. Lucas*, 2024-Ohio-842, ¶ 38 (8th Dist.), quoting *State v. Jones*, 2023-Ohio-380, ¶ 99 (8th Dist.). "Whenever the state seeks to introduce hearsay into a criminal proceeding, the court must determine not only whether the evidence fits within an exception, but also whether the introduction of such evidence offends an accused's right to confront witnesses against him." *State v. Powell*, 2019-Ohio-4345, ¶ 38 (8th Dist.), citing *State v. Kilbane*, 2014-Ohio-1228, ¶ 29 (8th Dist.). Accordingly, in order to be properly admissible at trial, the police-report narrative needed to be admissible under the rules of evidence and also not violate Edmond's rights under the Sixth Amendment to the United States Constitution.

{¶ 33} We will first address whether the police-report narrative was admissible under the rules of evidence. Typically, "a trial court has broad discretion

regarding the admission of evidence, including whether evidence constitutes hearsay and whether it is admissible hearsay." *In re A.M.*, 2022-Ohio-612, ¶ 22 (8th Dist.). Therefore, we "will not disturb a trial court's decision regarding the admissibility of hearsay evidence absent an abuse of discretion." *Id.*, citing *State v. Mauer*, 15 Ohio St.3d 239, 265 (1984). Moreover, "[c]ourts do not have discretion to erroneously apply the law." *Shiftmed, LLC v. Westchester Parkway Consulting, LLC,* 2025-Ohio-1554, ¶ 18 (8th Dist.), citing *Abdullah,* 2021-Ohio-3304, at ¶ 39.

{¶ 34} Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Generally, hearsay statements are inadmissible unless the statement comes in under a recognized exception. *State v. Campbell*, 2014-Ohio-493, ¶ 44 (8th Dist.); Evid.R. 802-807. Under these rules, police reports are generally considered inadmissible hearsay and "should not be submitted to the jury." *State v. Bailey*, 2012-Ohio-3447, ¶ 25 (8th Dist.), citing *State v. Leonard*, 2004-Ohio- 6235, ¶ 111. "A police report is hearsay unless it meets one of the exceptions enumerated in the Rules of Evidence." *State v. Piccenti*, 2024-Ohio-5821, ¶ 26 (10th Dist.).

{¶ 35} More specifically, the statements of individuals to the police and contained in a police report are "hearsay within hearsay" and inadmissible. *State v. Jones*, 2015-Ohio-5540, ¶ 8 (8th Dist.); Evid.R. 805; *see also Campbell* at ¶ 45 ("[A] police report is not admissible under the business-records exception in Evid.R. 803(6) if the report recites hearsay statements received by the officer from

others.).  In other words, "hearsay statements contained in a police report that do not have an independent source of admissibility are inadmissible under Evid.R. 803(8)."  *Amoako-Okyere v. Church of the Messiah United Methodist Church*, 2015-Ohio-3841, ¶ 50 (10th Dist.), citing *Cincinnati Ins. Co. v. Volkswagen of Am., Inc.*, 41 Ohio App.3d 239, 242 (10th Dist. 1987).  "Hearsay statements in a police report that lack 'an independent source of admissibility,' however, remain inadmissible at trial."  *Piccenti* at ¶ 26.

{¶ 36} Based on the above, we find that the police-report narrative was impermissible hearsay because it contains M.N.'s out-of-court statements made to the police in order to prove the truth of the matter asserted — that Edmond raped her.  Accordingly, to be admissible at trial, the proffered statements must have independently satisfied the requirements of a recognized exception to hearsay.

{¶ 37} The State argues that the police-report narrative was admissible under Evid.R. 801(D)(1)(b).  This rule provides that a statement is not hearsay if "the declarant testifies at trial or hearing and is subject to examination concerning the statement," and is "consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive . . . . "  Evid.R. 803(D)(1)(b).  On its face, this rule does not apply to the facts of this case.  Namely, the declarant – M.N. – did not testify at trial and was not subject to examination regarding her statements.  The State offers no other basis for the admissibility of the police-report narrative.

{¶ 38} Based on the above, we find that the trial court abused its discretion in permitting the police-report narrative to be read to the jury. The well-established authority above demonstrates that the police-report narrative is inadmissible hearsay and, further, there is no recognized exception permitting its admissibility based on the record of this case. Because we find the police-report narrative was not admissible under the rules of evidence, we do not need to consider whether its admission violated Edmond's constitutional rights under the Confrontation Clause. We do, however, need to determine whether the trial court's error in allowing the admission of the police-report narrative is harmless. *State v. Roberts*, 2025-Ohio-5120, ¶ 133.

{¶ 39} Crim.R. 52(A) defines the harmless-error doctrine in criminal cases and provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." The "'harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence . . . .'" *State v. Keith*, 1997 Ohio App. LEXIS 914, *25 (8th Dist. Mar. 13, 1997), quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986). The harmless-error doctrine recognizes that errors that do not affect the outcome of a criminal prosecution are disregarded on appeal. *State v. Williams*, 38 Ohio St.3d 346, 349 (1988).

{¶ 40} In determining whether the erroneous admission of evidence constitutes harmless error under Crim.R. 52(A), courts apply the following three-part analysis:

First, it must be determined whether the defendant was prejudiced by the error, i.e., whether the error had an impact on the verdict. Second, it must be determined whether the error was not harmless beyond a reasonable doubt. Lastly, once the prejudicial evidence is excised, the remaining evidence is weighed to determine whether it establishes the defendant's guilt beyond a reasonable doubt.

*State v. Harris*, 2015-Ohio-166, ¶ 37, citing *State v. Morris*, 2014-Ohio-5052, ¶ 25, 27-29, 33. An "error in the admission of evidence is harmless if there is no reasonable possibility that the exclusion of the evidence would have affected the result of the trial." *State v. Chambers*, 2014-Ohio-390, ¶ 40 (8th Dist.).

{¶ 41} Based on the above, we conclude that the trial court's erroneous admission of the police-report narrative excerpt was harmless. In particular, we find that the exclusion of this evidence would not have affected the result of the trial. Specifically, the remaining evidence introduced at trial supports Edmond's convictions for the rape and kidnapping of M.N. The medical records demonstrate that M.N. had vaginal intercourse with an unknown male without a condom and that she had vaginal bleeding since the attack. The medical records further show that M.N. answered, "I was raped" for her reason for coming to the emergency room. The DNA evidence demonstrated that Edmond's DNA profile was 1 in 1 trillion statistically a match for the unknown male DNA profile present in M.N.'s vaginal and anal swabs from her sexual assault kit. According to the testifying forensic scientist, this is considered a "strong match." Therefore, the uncontested DNA evidence in this case "strongly supports" the jury's verdict "on its own." *State v. Muhammed*, 2016-Ohio-8322, ¶ 24 (8th Dist.); *State v. Clark*, 2016-Ohio-4561, ¶ 27

(8th Dist.); *State v. Bandy*, 2007-Ohio-859, ¶ 85 (7th Dist.) (each confirming rape convictions of previously unknown assailants based on DNA evidence where the victim is unable to identify them at trial). Further, a conviction can also stand on circumstantial evidence alone. *Franklin*, 62 Ohio St.3d at 124, citing *State v. Nicely*, 39 Ohio St.3d 147, 154-155 (1988).

{¶ 42} Assignment of error No. 2 is overruled.

**Assignment of Error No. 3 – Manifest Weight of the Evidence**

{¶ 43} In his third assignment of error, Edmond argues that his convictions are against the manifest weight of the evidence. Edmond's argument rests on his assertion that M.B lacked credibility based on inconsistent statements she made at trial. With regard to M.N., Edmond asserts that there is no direct testimony or evidence regarding the alleged incident. Because we find the overall weight of the evidence supports Edmond's convictions, this assignment of error is not well-taken.

{¶ 44} "A manifest weight challenge questions whether the State has met its burden of persuasion." *State v. Harris*, 2020-Ohio-1497, ¶ 28 (8th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997). "[W]eight of the evidence addresses the evidence's effect of inducing belief. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's." *State v. Wilson*, 2007-Ohio-2202, ¶ 25, citing *Thompkins* at 386-387. A manifest-weight challenge raises factual issues and our review is as follows:

> "'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury

clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'"

*Harris* at ¶ 28, quoting *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). "The use of the word 'manifest' in the standard of review 'means that we can only reverse the trier of fact if its decision is very plainly or obviously contrary to the evidence.'" *Id.*, quoting *State v. Hernandez*, 2018-Ohio-5031, ¶ 20 (8th Dist.).

**{¶ 45}** Additionally, it has been well recognized that "inconsistencies or contradictions in a witness's testimony do not entitle a defendant to a reversal of a trial." *State v. Rentas,* 2024-Ohio-732, ¶ 16 (8th Dist.), citing *State v. Solomon,* 2021-Ohio-940, ¶ 62 (8th Dist.). Nor does the presence of conflicting testimony render a verdict against the manifest weight of the evidence. *State v. Pace,* 2025-Ohio-2874, ¶ 62 (10th Dist.). "A jury is free to accept or reject any or all the testimony of any witness." *State v. Cowen,* 2012-Ohio-3682, ¶ 54 (8th Dist.), citing *State v. Smith,* 2010-Ohio-4006, ¶ 16 (8th Dist.). Further, it is also well established that "a conviction can be sustained based on circumstantial evidence alone." *Franklin*, 62 Ohio St.3d at 124, citing *Nicely*, 39 Ohio St.3d at 154-155; *see also State v. Marques*, 2019-Ohio-42, ¶ 28-29 (10th Dist.) (A criminal conviction for rape may be based in whole or in part on circumstantial evidence of vaginal intercourse.). "Circumstantial evidence is not less probative than direct evidence, and, in some

instances, is even more reliable." *Nicely* at 151, citing *United States v. Andrino,* 501 F.2d 1373, 1378 (9th Cir. 1974).

**M.B.**

{¶ 46} Based on our independent review of the record in this case, we find that the State met its burden of persuasion regarding Edmond's convictions for the rape and kidnapping of M.B. and these convictions are not against the manifest weight of the evidence. M.B. testified describing what took place between her and Edmond. M.B. testified that she was able to identify Edmond from a blind photo array by recognizing his eyes. The DNA evidence introduced by the State (and not contradicted by defense counsel) demonstrated that Edmond's DNA was present on the vaginal swabs obtained from M.B.'s sexual assault kit. The DNA profile was a statistical match of 1 in 1 trillion. This evidence demonstrates that Edmond's convictions are not against the manifest weight of the evidence.

{¶ 47} As to M.B.'s credibility and the impact of her conflicting statements, the jury was free to accept or reject any or all of her testimony. Indeed, the jury rejected M.B.'s inconsistent statements regarding whether Edmond forced her to perform oral sex and found him not guilty on this count of the indictment. The jury was also free to accept or reject as it saw fit her inconsistent statements regarding any past drug and alcohol use, cell phone ownership, or any of the other inconsistencies in her testimony complained of by Edmond. *Cowen* at ¶ 54.

**M.N.**

{¶ 48} Also based on our independent review of the record, we find that the State met its burden of persuasion regarding Edmond's convictions for the rape and kidnapping of M.N. and these convictions are not against the manifest weight of the evidence. The evidence at trial included M.N.'s medical records from her emergency room visit immediately following the incident. These medical records demonstrate that M.N. had vaginal intercourse with an unknown male without a condom and that she had vaginal bleeding since the attack. The medical records further show that M.N. stated, "I was raped" for her reason for coming to the emergency room.

{¶ 49} The DNA evidence introduced at trial demonstrated that Edmond's DNA profile was 1 in 1 trillion statistically a match for the unknown male DNA profile present in M.N.'s vaginal and anal swabs from her sexual assault kit. According to the testifying forensic scientist, this is considered a "strong match." Moreover, as set forth previously, the uncontested DNA evidence in this case "strongly supports" the jury's verdict "on its own." *Muhammed*, 2016-Ohio-8322, at ¶ 24 (8th Dist.); *Clark*, 2016-Ohio-4561, at ¶ 27 (8th Dist.); *Bandy*, 2007-Ohio-859, at ¶ 85 (7th Dist.) (each confirming rape convictions of previously unknown assailants based on DNA evidence where the victim is unable to identify them at trial). Similarly, a conviction can stand alone on circumstantial evidence. *Franklin*, 62 Ohio St.3d at 124, citing *Nicely*, 39 Ohio St.3d at 154-155.

{¶ 50} Accordingly, Edmond's third assignment of error is not well-taken.

## Assignment of Error No. 4 – Prosecutorial Misconduct

{¶ 51} In his fourth assignment of error, Edmond alleges his constitutional rights were violated by prosecutorial misconduct during closing statement. Edmond argues that the State made several comments that impermissibly denigrated defense counsel, claimed Edmond was guilty, referred to facts not in evidence, and appealed to the jury's emotions. After reviewing the closing remarks made by the State as well as defense counsel, we do not find this assignment of error has merit.

{¶ 52} Because Edmond did not object to the State's remarks at trial, we review this assignment of error for plain error. *See, e.g., State v. Walker*, 2022-Ohio-1238, ¶ 38 (8th Dist.); *State v. White*, 82 Ohio St.3d 16, 22 (1998). Crim.R. 52(B) provides "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B) has been interpreted to place "three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial." *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). "First, there must be an error, i.e., a deviation from a legal rule." *Id.* Second, "the error must be plain. To be plain within the meaning of Crim.R. 52(B), an error must be an obvious defect in the trial proceedings." *Id.* Third, the error must have affected "substantial rights." *Id.* This requirement has been interpreted to mean "that the trial court's error must have affected the outcome of the trial." *Id.* "A forfeited error is not reversible error unless it affected the outcome of the proceedings and reversal is necessary to correct a manifest miscarriage of justice." *State v. Thomas*, 2018-Ohio-1081, ¶ 50 (8th Dist.).

{¶ 53} "'The test for prosecutorial misconduct is whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused.'" *State v. Newman*, 2020-Ohio-658, ¶ 7 (8th Dist.), quoting *State v. Smith*, 87 Ohio St.3d 424, 442 (2000). "'The touchstone of analysis "is the fairness of the trial, not the culpability of the prosecutor."'" *Id.*, quoting *Smith* at 442, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "The test for prosecutorial misconduct is whether the conduct complained of deprived the defendant of a fair trial." *State v. Jackson*, 92 Ohio St.3d 436, 441-442 (2001), citing *State v. Apanovitch*, 33 Ohio St.3d 19, 24 (1987). "A trial is not unfair, if, in the context of the entire trial, it appears clear beyond a reasonable doubt the jury would have found the defendant guilty even without the improper comments." *State v. Edwards*, 2022-Ohio-3534, ¶ 34 (8th Dist.), citing *State v. Treesh*, 90 Ohio St.3d 460, 464 (2001).

{¶ 54} "Additionally, '[p]rosecutors are granted wide latitude in closing argument, and the effect of any conduct of the prosecutor during closing argument must be considered in light of the entire case to determine whether the accused was denied a fair trial.'" *Walker* at ¶ 39, quoting *State v. Powell*, 2012-Ohio-2577, ¶ 149. "[I]solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." *State v. Penland*, 2023-Ohio-806, ¶ 93 (8th Dist.), citing *State v. Gapen*, 2004-Ohio-6548, ¶ 106, citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974). An appellate court should only reverse a conviction if the effect of the misconduct "'permeates the entire atmosphere of the trial.'" *State v. Gibson*, 2013-Ohio-4372, ¶ 99 (8th Dist.), quoting *State v.*

*Tumbleson*, 105 Ohio App.3d 693, 699 (12th Dist. 1995). Indeed, while it is improper for a prosecuting attorney to make arguments or remarks likely to inflame the passions of the jurors, "'[f]or a prosecutor's closing argument to be prejudicial, the remarks must be "so inflammatory as to render the jury's decision a product solely of passion and prejudice."'" *Walker* at ¶ 44, quoting *State v. Arrone*, 2006-Ohio-4144, ¶ 126 (2d Dist.), quoting *State v Williams*, 23 Ohio St.3d 16, 20 (1986).

{¶ 55} In light of the above set forth legal authority and our review of both the State's and defense counsel's closing arguments in this matter, we do not find that the State's remarks during closing argument deprived Edmond of a fair trial. Thus, he suffered no prejudice. Even if we were to consider the State's remarks referencing defense counsel's attempts to mislead the jury and to appeal to the jury's emotion as improper, we conclude that they were isolated and certainly did not "permeate the entire atmosphere of the trial." Neither were the remarks "so inflammatory as to render the jury's decision a product solely of passion and prejudice." Regarding the State's comments that defense counsel was misleading the jury, while we do find these comments somewhat troubling, they do not constitute plain error and moreover they were made in direct response to defense counsel's own closing statements insinuating drug use and prostitution by the victims – none of which were supported by the record. As discussed above, the jury had sufficient, credible evidence to convict Edmond without relying on the State's closing argument. In summary, Edmond's right to a fair trial was not undermined by the State's closing argument.

{¶ 56} Assignment of error No. 4 is overruled.

**Assignment of Error Nos. 5 and 6 – Ineffective Assistance of Counsel**

{¶ 57} Because Edmond's fifth and sixth assignments of error are both premised on allegations of ineffective assistance of counsel, we will address them together. Assignment of error No. 5 alleges that Edmond was deprived of effective assistance of counsel because his defense counsel failed to object to the comments made by the State during closing argument. Assignment of error No. 6 alleges that Edmond was deprived of effective assistance of counsel by his defense counsel's failure to file a motion to dismiss the offenses against him based on the expiration of the applicable statute of limitations. We find that both assignments of error lack merit.

> In order to establish a claim of ineffective assistance of counsel, a defendant must demonstrate "(1) deficient performance by counsel, namely that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the party, or a reasonable probability that but for counsel's errors, the outcome would have been different."

*State v. Moore*, 2022-Ohio-522, ¶ 29 (8th Dist.), quoting *State v. Knight*, 2021-Ohio-3674, ¶ 48 (8th Dist.), citing *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). "'[B]ecause of the difficulties inherent in making [such an] evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . .'" *State v. Jefferson*, 2025-Ohio-2008, ¶ 14 (8th Dist.), quoting *State v. Bradley,* 42 Ohio St.3d 136, 142 (1989), quoting *Strickland* at 689.

{¶ 58} "Prejudice is established by showing that but for the unreasonable error there is a reasonable probability that the results of the proceeding would have been different." *State v. Fortson*, 2001 Ohio App. LEXIS 5576 * 5 (8th Dist. Dec. 11, 2001). "A 'reasonable probability' is a 'probability sufficient to undermine confidence in the outcome.'" *State v. Khoshknabi*, 2018-Ohio-1752 ¶ 29 (8th Dist.), quoting *Strickland* at 694. Moreover, ""'where the failure to object does not constitute plain error, the issue cannot be reversed by claiming ineffective assistance of counsel.'"" *State v. Young,* 2020-Ohio-462, ¶ 103 (10th Dist.), quoting *State v. Roy,* 2014-Ohio-4587, ¶ 20 (10th Dist.), quoting *State v. Carson,* 2006-Ohio-2440, ¶ 51 (10th Dist.). Furthermore, we recognize that ""'the failure to do a futile act cannot be the basis for a claim of ineffective assistance of counsel, nor could such a failure be prejudicial.'"" *State v. Thompson,* 2024-Ohio-5910, ¶ 7 (8th Dist.), quoting *State v. Nelson*, 2017-Ohio-5568, ¶ 79, quoting *State v. Knox*, 2013-Ohio-1662, ¶ 20 (8th Dist.), citing *State v. Ford*, 2007-Ohio-5722, ¶ 9 (8th Dist.).

{¶ 59} In assignment of error No. 5, Edmond alleges that he was deprived of effective assistance of counsel because his defense counsel failed to object to the remarks made by the State during closing argument. As discussed above, we reviewed Edmond's arguments concerning the State's alleged prosecutorial misconduct for plain error and found that the State's comments during closing argument did not constitute prosecutorial misconduct. Therefore, Edmond is unable to demonstrate that his defense counsel's failure to object fell below an

objective standard of reasonable representation or that he was prejudiced by the alleged failure by his defense counsel. Assignment of error No. 5 is not well-taken.

{¶ 60} In assignment of error No. 6, Edmond argues that he was deprived of effective assistance of counsel by his trial counsel's failure to challenge the applicable statute of limitations for rape. Specifically, Edmond asserts that the State failed to exercise reasonable diligence to identify him as a suspect and therefore the John Doe indictment issued in this case could not be used to toll the statute of limitations. Accordingly, Edmond contends he has a "colorable claim" that the State's prosecution was barred and he was prejudiced by his defense counsel's failure to raise the issue below. In contrast, the State argues that Edmond was not deprived of effective assistance of counsel because the State did exercise reasonable diligence, the John Doe indictment appropriately tolled the statute of limitations, and thus any challenge to the statute of limitations would be "frivolous." We agree with the State that law enforcement exercised reasonable diligence in attempting to identify Edmond as suspect and thus, the filing of a John Doe indictment in 2015 tolled the statute of limitations.

{¶ 61} In general, the purpose of the statute of limitations is not to "give offenders a chance to avoid liability, but rather, 'to discourage inefficient or dilatory law enforcement.'" *State v. Moore*, 2022-Ohio-522, ¶ 32 (8th Dist.), quoting *State v. Climaco*, 85 Ohio St.3d 582, 586 (1999). R.C. 2901.13(A)(3) establishes the statute of limitations for the criminal offense of rape under R.C. 2907.02 as 20 years from the date of the offense. If prosecution is not commenced within that time, it is

barred. R.C. 2901.13(A)(3). The offenses at issue occurred in 2000 and 2001. Thus, under R.C. 2901.13(A)(3), the statute of limitations on these offenses would have normally run in 2020 and 2021, respectively. The State amended the indictment on December 4, 2023, to name Edmond as defendant.

{¶ 62} The statute of limitations, however, may be tolled under certain circumstances, including in the situations presented by the instant matters. In particular, this court has held that a John Doe indictment may be used to toll an applicable statute of limitations in cases where "the suspect is unknown, or where the only way to ascertain the identity of the suspect is DNA comparison." *Moore* at ¶ 38, citing *State v. Gulley*, 2015-Ohio-3582, ¶ 16 (8th Dist.). This court further held that a John Doe indictment tolls the statute of limitations in cases involving unknown assailants "if reasonable diligence was used by law enforcement in its attempts to identify the defendant, and all attempts have failed . . . ." *Moore* at ¶ 34; *Gulley* at ¶ 15; *State v. Young*, 2017-Ohio-7162, ¶ 20 (8th Dist.). Courts have defined "reasonable diligence" with reference to *Black's Law Dictionary* (5th Ed. 1979), which provides as follows:

> A fair, proper and due degree of care and activity, measured with reference to the particular circumstances; such diligence, care, or attention as might be expected from a [person] of ordinary prudence and activity.

*Sizemore v. Smith,* 6 Ohio St.3d 330, 332 (1983); *Moore* at ¶ 34; *Young* at ¶ 20. "What constitutes reasonable diligence will depend on the facts and circumstances of each particular case." *Sizemore* at 332.

{¶ 63} The record demonstrates that law enforcement immediately attempted to investigate and identify a suspect after M.N. and M.B. were attacked by unknown assailants but were unsuccessful. Law enforcement made several attempts to locate M.N. and M.B. to investigate the matter but were unsuccessful. Nevertheless, law enforcement still submitted both M.N.'s and M.B.'s sexual assault kits for DNA testing. However, these results only provided law enforcement with an unknown male DNA profile. Yet, law enforcement made further attempts to investigate after the unknown DNA profiles from the victim's sexual assault kits were matched to one another. But still no suspect was identified through these efforts. It was not until 2022 or 2023, while still investigating these matters, that law enforcement developed genealogical evidence that eventually led them to identify Edmond as the defendant.

{¶ 64} Based on these facts and circumstances, we find that law enforcement exercised reasonable diligence in attempting to identify Edmond and these attempts failed. M.N.'s and M.B.'s assailant was unknown, and law enforcement made repeated attempts to identify the identity of the unknown assailant prior to filing the John Doe indictment. Accordingly, the filing of the John Doe indictment appropriately tolled the statute of limitations. Consequently, Edmond was not deprived of effective assistance of counsel when his counsel failed to raise the statute-of-limitations defense because there was no reasonable probability that this defense would have succeeded and impacted the outcome of this matter. Edmond's sixth assignment of error lacks merit.

**Assignment of Error No. 7 – Cumulative Error**

{¶ 65} In his last assignment of error, Edmond asserts his convictions should be reversed based on the doctrine of cumulative error. Essentially, Edmond argues that the trial court's numerous errors alone may not require reversal, their cumulative effect deprived him of his right to a fair trial. Because we did not find any prejudicial error in the trial court's judgment below, this assignment of error is overruled.

{¶ 66} The cumulative-error doctrine provides that "a trial court's judgment may be reversed if the cumulative effect of multiple errors prevents a fair trial even though each of the individual errors, standing alone, would not constitute grounds for reversal." *Marrs v. Mickel*, 2023-Ohio-4528, ¶ 23 (8th Dist.), citing *State v. Garner*, 74 Ohio St.3d 49, 64 (1995). That being said, "the cumulative-error doctrine does not apply in cases where there are not multiple errors." *Id.* at ¶ 24, citing *State v. Williams*, 2023-Ohio-2296, ¶ 103 (8th Dist.); *180 Degree Solutions L.L.C. v. Metron Nutraceuticals, L.L.C.*, 2021-Ohio-2769, ¶ 92 (8th Dist.). "The doctrine of cumulative error is inapplicable when the alleged errors are found to be harmless or nonexistent." *Id.*, citing *State v. Jackson*, 2023-Ohio-2381, ¶ 84 (8th Dist.), quoting *State v. Allen*, 2016-Ohio-102, ¶ 53 (8th Dist.). Simply stated, "[w]hen an appellate court determines no error has occurred, the doctrine cannot apply." *State v. Lyons*, 2017-Ohio-4385, ¶ 46 (7th Dist.).

{¶ 67} As we only find harmless error in one assignment of error and no error in Edmond's remaining assignments of error regarding his convictions, assignment of error No. 7 is overruled.

{¶ 68} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, ADMINISTRATIVE JUDGE

EILEEN T. GALLAGHER, J., and
MICHAEL JOHN RYAN, J., CONCUR